| UNITED STATES DISTRICT COURT | |
|---|---|
| SOUTHERN DISTRICT OF NEW YORK | USDC SDNY |
| ------------------------------------------------------------X | DOCUMENT |
| | ELECTRONICALLY FILED |
| SALIJO SEFOVIC, | DOC #: _____ |
| | DATE FILED: August 23, 2017 |
| *Plaintiff*, | |
| | 15 Civ. 5792 (PAC) |
| -*against*- | |
| | |
| MEMORIAL SLOAN KETTERING CANCER | **OPINION & ORDER** |
| CENTER, *et al.*, | |
| | |
| *Defendants*. | |
| ------------------------------------------------------------X | |

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Salijo Sefovic sues his former employer, defendant Memorial Sloan Kettering Cancer Center (the "Center"), and former supervisors, defendants Jose Casa, Thomas Mattice, and Frederic Stell, (together with the Center, "Defendants") for unlawful discrimination and retaliation against him on the basis of his age and disability, when his employment with the Center was terminated. He asserts sixteen causes of action based on six separate statutes: the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").

Defendants move for summary judgment on all claims. The undisputed facts establish that Sefovic was absent from work for an extended period of time without authorization; he failed to comply with a request to return to work; and he was continuously unable to work after

1

September 2014. The termination was appropriate. Accordingly, the Court grants Defendants'
motion with respect to Sefovic's claims under the ADA, the ADEA, the FMLA, and Title VII,
and declines to exercise supplemental jurisdiction over Sefovic's state-law claims under the
NYSHRL and NYCHRL.

## BACKGROUND

Sefovic worked as an evening shift Operations Manager in the Center's Environmental
Services Department ("EVS") from March 8, 1993 to October 21, 2014. Defs.' Local Rule 56.1
Statement ("Defs. 56.1") ¶ 20, Dkt. 48. The EVS is responsible for keeping the hospital sanitary.
*Id.* As Operations Manager, Sefovic instructed and evaluated the performance of supervisors
that reported to him, distributed work assignments, and addressed disciplinary issues. *Id.* ¶ 21.
From approximately 2010 to late 2013, Sefovic reported to defendant Jose Casa. *Id.* ¶ 22. When
Casa started overseeing the day shift only in early 2014, then Sefovic reported to defendant
Thomas Mattice. *Id.* ¶ 23. Casa and Mattice have both reported to defendant Frederic Stell since
2014. *Id.* ¶ 24.

Sefovic was terminated on October 23, 2014. *Id.* ¶ 59. Defendants take the position that
Sefovic was terminated not for any discriminatory or retaliatory reason but because he was
absent for work for an extended period of time without authorization. *See* Mot. at 1. The Center
offers FMLA and Non-FMLA Leave of up to 26 weeks per year for medical leave. Defs. 56.1
¶ 9. The approval process requires employees to provide documentation supporting their need
for medical leave. Young Decl. ¶ 9, Dkt. 51. The Center's FMLA and Disability Leave Center
and the Center's third-party benefits administrator and short-term disability benefits provider
manage medical leaves and determine whether to approve medical requests after the employee or

2

the employee's doctor submits the required paperwork. Defs. 56.1 ¶¶ 8, 12. There is no role for employees' managers to play in deciding whether to approve or deny medical leave. *Id.* ¶ 13.

As a result of a heart condition, Sefovic took FMLA leave from February 10, 2014 through April 1, 2014 and from May 13, 2014 through June 12, 2014; and he took Non-FMLA leave from June 13 through June 27, 2014. *Id.* ¶¶ 37–38. In July 2014, Sefovic requested Non-FMLA leave starting July 18, 2014. *Id.* ¶ 41. The Center did not approve the leave request for July. *Id.* ¶ 42. By letter dated August 20, 2014, the Center informed Sefovic that his leave was denied because he "did not provide the documentation requested by [his] employer for this leave." Chase Decl. Ex. I, Dkt. 50-9. Since the leave was unapproved, Mattice asked Sefovic to return before the requested end date for the leave period, which Sefovic did. Defs. 56.1 ¶ 44; Young Dep. 23, July 14, 2016, Dkt. 50-5. Soon after returning, Sefovic again went out on medical leave. Defs. 56.1 ¶ 45. He was approved for leave from August 18, 2014 through September 10, 2014. *Id.* ¶ 46.

On September 22, 2014, shortly after returning from leave, Sefovic fell down the stairs at work. *Id.* ¶ 47. He sustained back injuries from the fall and went out from work as a result. *See* Sefovic Dep. 170, May 18, 2016, Dkt. 50-1. Sefovic sought to be on leave starting September 23, 2014. *See id.* at 164–65; Defs. 56.1 ¶ 48, Chase Decl. Ex. N, Dkt. 50-14. By letter dated September 25, 2014, the Center advised Sefovic that paperwork relating to his fall and requested medical leave was due October 15, 2014. Chase Decl. Ex. N. By letter dated October 17, 2014, Mattice informed Sefovic that his leave was unapproved and that Sefovic had "failed to follow departmental call in procedures." Chase Decl. Ex. P, Dkt. 50-16. Mattice's letter also stated: "You are advised to report to work immediately for your next scheduled shift on Monday, October 20th, 2014." *Id.* By letter dated October 20, 2014, the Center notified Sefovic that his

3

leave request was denied because he "did not provide the documentation requested by [his] employer for this leave." Chase Decl. Ex. O, Dkt. 50-15. Further, Mattice called Sefovic to tell Sefovic that he must return to work, and Sefovic responded that he could not. Defs. 56.1 ¶ 55; Pl. Local Rule 56.1 Statement in Opposition ("Pl. 56.1") ¶ 55, Dkt. 78; Sefovic Dep. 174–75.

Sefovic did not return to work on October 20, 2014. Defs. 56.1 ¶ 56. On October 21, 2014, Sefovic called out of work because he did not feel he was able to work. *Id.* ¶ 57. Sefovic's managers, and Joy Young of Human Resources, jointly decided to terminate Sefovic's employment when he did not return from his leave despite the requests that he do so. Defs. 56.1 ¶ 61. On October 23, 2014, the Center sent Sefovic a letter that his employment was terminated effective October 21, 2014 "because of two separate occasions of unapproved leave." Chase Decl. Ex. Q, Dkt. 50-17. Sefovic was one of eight EVS employees terminated between 2013 and 2014 for failing to return to work after being directed to do so. Defs. 56.1 ¶ 67. The age of seven other terminated employees were 23, 25, 32, 33, 33, 45, and 47. *Id.* ¶ 68. They were all younger than Sefovic, who was 58 when terminated. Young Decl. ¶ 14.

Sefovic takes the position that his termination was, in fact, retaliatory and the result of age and disability discrimination. He surmises that because of his extensive medical leaves in 2013 and 2014, his "managers did not like the fact that [he] was not there five days a week and not able to work 12-15 hours a day." Sefovic Decl. ¶ 3, Dkt. 77. He claims he was "excluded from any meetings, and interviews of new employees," and that after returning to work from leave, "Defendants were behaving very aggressively with [him], they never talked to [him] directly, and they removed three out of five supervisors who were reporting to [him] and . . . started complaining about [his] performance." *Id.*

Sefovic alleges that during his over 20 years with the Center, he "had a reputation for being competent, and was highly regarded by both his subordinates and superiors, as he frequently received commendations for the work he performed." Opp. at 5; Compl ¶ 29. However, on December 17, 2013, Sefovic was suspended for three days and received a final warning. Chase Decl. Ex. F, Dkt. 50-6; Defs. 56.1 ¶ 26. The warning letter stated that Human Resources had conducted an investigation and found that Sefovic had failed to follow the performance appraisal process by showing several of his reports their performance review scores prior to their final performance reviews and by incorrectly telling his reports that Stell had subsequently changed their review scores. Chase Decl. Ex. F. Further, in 2014, the Center commenced a talent planning and performance evaluation process. Defs. 56.1 ¶ 27. EVS management and Human Resources conducted an appraisal of EVS management and supervisor-level employees in the spring of 2014, and Sefovic, as well as others, did not score well. *Id.* ¶¶ 29–30. Many of the employees who did not score well chose to leave the Center, and others accepted a performance improvement plan ("PIP"). *Id.* ¶ 31. Sefovic chose to be placed on a PIP instead of accepting a severance package. *Id.* ¶ 32.

According to Sefovic, Defendants treated Sefovic this way "to create the illusion of insubordination in order to discharge him because of his age, disability, and FMLA leave of absence and subjected him to a hostile work environment." Opp. at 5; Compl. ¶ 51.

## DISCUSSION

I. **Legal Standards**

   A. **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (internal quotation marks omitted). And "[a] fact is material if it might affect the outcome of the suit under the governing law." *Id.* (internal quotation marks omitted). "In reviewing a motion for summary judgment, [the Court] construe[s] all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).

"In order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that sets forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (internal quotation marks and alteration omitted). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . ." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *see also Major League Baseball*, 542 F.3d at 310 ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory . . . ."). Nor may a party rely only on the "mere allegations or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B. *McDonnell Douglas* **Framework**

Sefovic's discrimination claims under the ADA and the ADEA and his retaliation claims under the ADA, ADEA and FMLA are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (ADEA discrimination); *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013) (ADA discrimination); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110

6

(2d Cir. 2010) (ADEA retaliation); *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004) (FMLA retaliation); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA retaliation). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. *See Delaney*, 766 F.3d at 168; *Treglia*, 313 F.3d at 721. If the plaintiff meets its burden, the defendant must articulate some legitimate, non-discriminatory or non-retaliatory reason for its challenged action. *See id.* If the defendant meets its burden, the burden shifts back to the plaintiff to "prove that the employer's proffered reason was a pretext for discrimination" or retaliation. *See id.*

## II. Federal Discrimination Claims

### A. ADA Discrimination

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff can establish a prima facie case of discrimination under the ADA by showing "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). "Under the last element, a plaintiff must show that the adverse employment action took place under circumstances giving rise to an inference of discrimination." *Id.* (internal quotation marks omitted).

Further, "[d]iscrimination in violation of the ADA includes . . . 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)

7

(quoting 42 U.S.C. § 12112(b)(5)(A)).  Thus, a plaintiff can "make[] out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following:  (1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* at 96–97 (internal quotation marks omitted).

Defendants argue that they are entitled to summary judgment because Sefovic cannot show that he was qualified to perform the essential functions of his job and that he was terminated because of his disability.  They also argue that there was a legitimate, non-discriminatory reason for his termination, which Sefovic cannot show was merely pretextual.  The Court agrees that summary judgment is appropriate because Sefovic presents no evidence that he was qualified to perform the essential functions of his job (indeed all the evidence is to the contrary), as of October 2014, when he was terminated.  The Court therefore need not address Defendants' other arguments.

Sefovic testified in his deposition that since he called out of work on October 21, 2014, he has been unable to work.  Sefovic Dep. 181, 206.  Sefovic's admission that he cannot work "prevent[s] [him] from performing the essential functions of [his] job, and thereby preclude[s] [him] from establishing a prima facie case of disability discrimination under the ADA." *Sesay-Harrell v. NYC Dep't of Homeless Servs.*, 12 Civ. 925 (KPF), 2013 WL 6244158, at *17 (S.D.N.Y. Dec. 2, 2013) (collecting cases).

Sefovic attempts to avoid this conclusion by arguing that Defendants failed to offer him a reasonable accommodation.  *See* Opp. at 11–12.  But Sefovic admits that he never requested any accommodation.  *See* Sefovic Dep. 184.  Nevertheless, "an employer has a duty reasonably to

accommodate an employee's disability if the disability is obvious." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). "[I]f the employer knew or reasonably should have known that the employee was disabled," the employer must "engage in an interactive process with [its] employees and in that way work together to assess whether an employee's disability can be reasonably accommodated." *Id.* 135–36 (internal quotation marks and alteration omitted). Failure to engage in an interactive process, however, does not give rise to a valid independent claim under the ADA. *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017). There must also be "evidence that accommodation was possible." *See id.* at 86. The plaintiff must "show that a reasonable accommodation existed at the time of his dismissal." *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017). "The burden of persuasion on the 'existence' of an 'effective accommodation' is not satisfied by mere speculation." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000).

Sefovic's current claim that "[i]t is conceivable that [he] could do his work with some accommodations like less hours and/or moving him to a day shift," Opp. at 11, is "mere speculation," *Jackan*, 205 F.3d at 566. Further, it is contradicted by facts and Sefovic's own testimony. At his deposition, Sefovic stated that he "couldn't return to work because of [his] injuries . . . [a]t any point." Sefovic Dep. 206. When asked whether there was "anything that the Center or the other defendants could have done to allow [him] to perform [his] job," Sefovic answered "[n]o, not really." *Id.* at 210. And in his declaration in opposition to Defendants' summary judgment motion, Sefovic stated that he "had at least two Independent Medical Examinations that concluded that [he] had a total disability." Sefovic Decl. ¶ 4.

Sefovic also attempts to rely on a December 17, 2014 independent medical examination that he argues concluded he was "capable of doing a light work in December of 2014." Opp. at

9

11 (citing Sipsas Decl. Ex. D, Dkt. 79-6).  But that fails to show that Sefovic was able to work "at the time of his dismissal."  *Stevens*, 851 F.3d at 231.  Sefovic presents no evidence showing that he was "qualified to perform the essential functions of the job with or without reasonable accommodation," *Davis*, 804 F.3d at 235, or that a reasonable accommodation existed, *see Stevens*, 851 F.3d at 231.  Summary judgment is therefore appropriate.

B. **ADEA Discrimination**

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges or employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To establish a prima facie case of age discrimination under the ADEA, a plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experience adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination."  *Gorzynski*, 596 F.3d at 107.

Since all evidence shows that Sefovic was unable to work at the time of his termination (*see* Section II.A, *supra*), he cannot meet his burden of establishing that he was qualified for the position.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 142 (2d Cir. 2016) (affirming dismissal where plaintiff could not establish prima facie case under the ADEA because he was "judicially estopped from asserting that he could perform his essential job functions" after swearing to the Social Security Administration that he was unable to work).

Moreover, there is no evidence of any discussion of Sefovic's age and Sefovic offers no proof that his termination "occurred under circumstances giving rise to an inference of discrimination."  *Gorzynski*, 596 F.3d at 107.  Sefovic's arguments regarding Defendants' purported age discrimination go from speculative to contradictory.  First, he conjectures that

10

"Defendants wanted to get rid of [him] because possibly he was getting older and as an older man they thought he was slow or resistant to change to the new management directives." Opp. at 18. That is pure speculation unsupported by any evidence suggesting as much. Instead, the evidence undermines any inference of age discrimination. Seven EVS employees who were younger than Sefovic—ranging in age from 23 to 47—were terminated between 2013 and 2014 for failing to return to work after being directed to do so. Defs. 56.1 ¶¶ 67–68. Further, Sefovic was terminated only after the Center determined for a second time that Sefovic went on leave without authorization. *See id.* ¶ 42; Chase Decl. Ex. P. And Sefovic admitted that he did not know of "anyone at the Center at any time mak[ing] any kind of comment to [Sefovic] about [his] age."[1] Sefovic Dep. 203; *see also id.* at 189–91.

In any event, Sefovic concludes that the "real reason" for his termination "seems to be [his] alleged 'mixed performance': inability to improve his managerial skills and a warning memorandum that alleged that the plaintiff wrongly implicated Mr. Stell that appraisal scores of Plaintiff's supervisors were lowered by him." Opp. at 18. This assertion indicates that his termination was due to performance issues, and contradicts the argument that Sefovic's age had anything to do with his termination. Thus, Sefovic's arguments do not show that there is an issue of material fact as to whether his termination "occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. Similarly, Sefovic fails to show

---

[1] Additionally, when asked whether "anyone at the Center at any time [made] any derogatory comments to [him] about [his] age," Sefovic responded "no." Sefovic Dep. 203. He later submitted an errata sheet purporting to withdraw his "no" response. Sipsas Decl. Ex. B, Dkt. 79-2. Sefovic claimed on the errata sheet that he "[d]id not understand at the time of deposition the word 'derogatory'" and that his "answer would be: "Tom Mattice made indirect comments about my age." *Id.* Not only was Sefovic's errata sheet untimely, *see* Chase Reply Decl. ¶ 2, Dkt. 82; Fed. R. Civ. P. 30 (e), it was submitted after Defendants specifically raised the testimony in question to the Court in their pre-motion letter, Dkt. 44, and it directly contradicts Sefovic's (uncorrected) testimony that he did not know of anyone making any kind of comment to him about his age, Sefovic Dep. 203. The errata sheet therefore does not create any material issue of fact as to whether Sefovic's termination occurred under circumstances giving rise to an inference of discrimination. *See Barnes v. Ross*, 12 Civ. 1916 (PKC), 2014 WL 1329128, at *11–12 (S.D.N.Y. Apr. 3, 2014).

that there is a material issue of fact as to whether Defendants' legitimate, non-discriminatory reason for terminating Sefovic—that he was absent without authorization—was pretextual. Consequently, the Court grants Defendants' motion for summary judgment on Sefovic's ADEA discrimination claim.

## III. Federal Retaliation Claims

### A. ADA Retaliation

The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). The elements for an ADA retaliation claim are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. Of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002).

Sefovic claims that he "was retaliated against because of his inability to learn new managerial skills possibly because of his age and educational background and possibly because of the lack of a perfect command of the English language." Opp. at 21. Further, he states that "he was targeted by Mr. Stell because of the allegations that Plaintiff wrongly accused Mr. Stell of lowering his supervisors' performance scores." *Id.* Inability to learn new skills, lack of a perfect command of English, and allegations that a plaintiff wrongly accused his supervisor of lowering performance review scores are not protected activities under the ADA. *See Flieger v. E. Suffolk BOCES*, --- F. App'x ---, 2017 WL 2377853, at *3 (2d Cir. June 1, 2017) (summary order) ("Activities protected by the ADA include complaints of ADA discrimination, including

12

complaints on a good faith belief that the employer's actions violated the ADA, and requests for reasonable accommodations."). Sefovic fails to present any evidence that he engaged in a protected activity under the ADA, and as a result, summary judgment is warranted.

### B. ADEA Retaliation

Under the ADEA's anti-retaliation provisions, it is "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such an individual . . . participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d). To establish a prima facie case of retaliation under the ADEA, a plaintiff "must show (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski*, 596 F.3d at 110.

"As to the 'protected activity' element of a[n] . . . ADEA retaliation claim, the plaintiff need only have a good faith, reasonable belief that he was opposing an employment practice made unlawful by" the ADEA. *Kessler v. Westchester Cnty. Dep't of Social Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (internal quotation marks omitted). As with his ADA retaliation claim, Sefovic does not present any evidence that he engaged in any protected activity under the ADEA. The Court therefore grants Defendants' motion for summary judgment on Sefovic's ADEA retaliation claim.[2]

---

[2] Sefovic purports to bring a retaliation claim pursuant to Title VII. *See* Compl. ¶¶ 74–77. The Court assumes in its analysis that Sefovic meant to bring his retaliation claim under the ADEA instead. *See id.* ¶ 3. However, if he, in fact, meant to bring a claim under Title VII, the claim fails all the same. The prima facie elements for a retaliation claim are the same under Title VII as under the ADEA, *see Kessler*, 461 F.3d at 205–06, and Sefovic does not present any evidence that he engaged in a protected activity under Title VII.

C.   **FMLA Retaliation**

Section 2615(a)(1) of the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). "[T]erminations for exercising FMLA rights by, for example, taking legitimate FMLA leave, are actionable under § 2615(a)(1)." *Woods v. Start Treatment & Recovery Centers, Inc.*, --- F.3d ---, 2017 WL 3044628, at *5 (2d Cir. July 19, 2017). To make out a prima facie case of FMLA retaliation, a plaintiff "must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004).

As discussed above, there is no evidence that Sefovic was qualified for his position as he was unable to work (*see* Section II.A, *supra*). He therefore has failed to present sufficient evidence to survive summary judgment as to his FMLA retaliation claim. *See Daley v. Cablevision Sys. Corp.*, 12 Civ. 6316 (NSR), 2016 WL 880203, at *8 (S.D.N.Y. Mar. 7, 2016) (FMLA retaliation claim "fails because Plaintiff cannot establish he was qualified for the position.").

IV.  **FMLA Interference Claim**

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (citing 29 U.S.C. § 2615(a)(1)). "[A] plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take

leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Id.*

Defendants are entitled to summary judgment on Sefovic's FMLA interference claim because he has failed to present evidence showing that he "was denied benefits to which [he] was entitled under the FMLA" or that Defendants impeded him in exercising his rights under the FMLA *See id.* All evidence indicates that the process for taking leave was well known and established. Certainly, Sefovic had no trouble requesting or taking his FMLA leave; and he took all of the twelve weeks of leave he was entitled to under the FMLA. *See Spinelli v. City of N.Y. Law Dep't*, 13 Civ. 7112 (GBD) (SN), 2016 WL 5476001, at *2 (S.D.N.Y. Sept. 29, 2016) ("[Plaintiff] cannot make a *prima facie* case for FMLA interference because her leave was granted and fully exhausted.").

## V.      Hostile Work Environment Claim

Sefovic purports to bring a hostile work environment claim pursuant to Title VII. *See* Compl. ¶ 73. Because nothing in Sefovic's pleadings suggests that the conduct he complains of occurred because of his membership in a class protected under Title VII, the Court assumes Sefovic meant to bring his hostile work environment claim pursuant to the ADA and ADEA. *See id.* ¶ 72 ("[D]efendants regularly subjected plaintiff to ongoing severe and pervasive conduct based upon his *age and disability* . . . ." (emphasis added)). The Court further assumes, without deciding, that Sefovic exhausted his administrative remedies for his hostile work environment claim.

"The Second Circuit has not yet decided whether a hostile work environment claim is cognizable under the ADA." *Flieger*, 2017 WL 2377853, at *3 (internal quotation marks omitted). However, "district courts in the Second Circuit have evaluated ADA hostile work

15

environment claims using the Title VII standard." *Kleinman v. Fashion Inst. of Tech.*, 16 Civ. 4348 (KPF), 2017 WL 3016940, at *10 (S.D.N.Y. July 14, 2017) (internal quotation marks omitted). ADEA hostile work environment claims are also evaluated under the Title VII standard. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

Under the Title VII hostile work environment standard, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320–21 (2d Cir. 2015) (internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321. "In determining whether a plaintiff suffered a hostile work environment, [the Court] must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted).

Sefovic rests his hostile work environment claim on his allegations that "[h]e was excluded from managerial meetings, interviews of new employees, and supervisors were taken away from him." Opp. at 22. No reasonable jury could conclude from these allegations that Sefovic was subjected to a hostile work environment. *See e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (finding no hostile work environment where plaintiff alleged "that defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside

16

of her responsibilities, threw books, and sent rude emails to her"). Stated simply, the alleged conduct Sefovic identifies was not severe or pervasive enough to alter the conditions of his employment, and so the Court grants Defendants' motion for summary judgment on Sefovic's hostile work environment claim.

## VI. NYSHRL and NYCHRL Claims

District courts have jurisdiction over state-law claims that are "so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a state-law claim where, among other things, it "has dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Because the Court grants Defendants' motion for summary judgment with respect to Sefovic's federal-law claims, the Court declines to exercise supplemental jurisdiction over his NYSHRL and NYCHRL claims.

## **CONCLUSION**

The Court grants Defendants' motion for summary judgment as to Sefovic's claims under the ADA, the ADEA, the FMLA, and Title VII. Sefovic's claims under the NYSHRL and NYCHRL are dismissed without prejudice. The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
August 23, 2017

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge